UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL A. DUNNING, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 2:14-cv-00401-JCN |
| ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, ) | |
| SOCIAL SECURITY ADMINISTRATION ) | |
| ) | |
| Defendant ) | |

### MEMORANDUM OF DECISION[1]

In this action, Plaintiff Michael A. Dunning seeks disability insurance benefits under Title II of the Social Security Act. Defendant Commissioner found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

As explained below, following a review of the record, and after consideration of the parties' arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the June 25, 2013, decision of the Administrative Law Judge (ALJ) (ECF No. 9-2.)[2] The ALJ's decision tracks the five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, non-listing-level impairments consisting of

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the ALJ's decision.

degenerative disk disease, obesity, and a learning disorder. (ALJ Decision ¶¶ 3, 4.) The ALJ determined that with his impairments, Plaintiff has a residual functional capacity (RFC) to engage in medium work, subject to a variety of postural and environmental limitations; and that Plaintiff can understand, remember, and carry out simple instructions and tasks. (*Id.* ¶ 5.)

Based on the RFC finding, Plaintiff's vocational profile, and the testimony of a vocational expert, the ALJ concluded that Plaintiff could adjust to work existing in the national economy, including in the representative occupations of retail marker, addressor, and surveillance system monitor. (*Id.* ¶ 10.) The ALJ noted that the identified jobs were at the light and sedentary level of exertion, and "could be performed even if the adopted RFC were significantly more restrictive." (R. 35.) The ALJ, therefore, found that Plaintiff has not been under a disability from the alleged onset date through the date of decision. (*Id.* ¶ 11.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff argues that the ALJ failed to consult a medical expert and mischaracterized the medical records in order to find only three severe impairments. (Statement of Errors at 5 – 7.) Plaintiff maintains that this step 2 error was prejudicial because additional severe impairments, which Plaintiff argues were established by the record evidence, would have further restricted his work capacity. (*Id.* at 7 – 8.) Plaintiff also argues that the ALJ effectively judged matters entrusted to experts when he assessed Plaintiff's RFC, and failed to provide a function-by-function assessment when he rejected the treating source opinion of Heather Sharkey, D.O. (*Id.* at 8 – 12.) Finally, Plaintiff contends that he did not receive a fair hearing because the ALJ abruptly discontinued the hearing when Plaintiff's representative asked questions of the vocational expert, which questions the vocational expert refused to answer. (*Id.* at 12 – 13.)

**A.     The Administrative Hearing**

Preliminarily, the Court concludes that the record does not support Plaintiff's contention that the ALJ deprived him of a full and fair opportunity to question the vocational expert. Rather, the record demonstrates that Plaintiff's representative challenged the foundation upon which the vocational expert relied to support her opinions regarding certain occupations. The ALJ permitted reasonable inquiry into the matter, and the vocational expert responded to questions posed by Plaintiff's representative. Although the ALJ suggested that he would not permit the representative to continue questioning on that topic for another half hour, he did not preclude relevant questioning and the representative voluntarily changed the topic thereafter. (R. 93 – 96.) The ALJ's management of the questioning of the vocational expert was within the ALJ's authority, and does not constitute error.

**B.     Step 2**

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act.  20 C.F.R. § 416.920(a)(4)(ii).  The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims.  *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986).  An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85–28).  At step 2, medical evidence is required to support a finding of severe impairment.  20 C.F.R. § 416.928.

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5.  *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

   *1. Obstructive sleep apnea and chronic obstructive pulmonary disease, complicated by obesity*

Plaintiff argues that the ALJ erred when he found that Plaintiff's obstructive sleep apnea and chronic obstructive pulmonary disease are non-severe, either singly or in combination,

4

especially when considered in combination with obesity. According to Plaintiff, the severity of these conditions (which include severe fatigue) is demonstrated by findings of record that were never considered by the experts upon whom the ALJ relied. (Statement of Errors at 5 – 7, citing Exhs. 10F – 14F.) The cited records include a January 2013 report of pulmonary testing (R. 388), a March 2013 impression by Patrick Keaney, M.D., that he suspected that Plaintiff had "mild underlying COPD/chronic bronchitis related to his smoking" (R. 414), a March 2013 polysomnography report (R. 406), a treating source statement by Dr. Sharkey (Exh. 13F), and progress notes by Paula Urbach NP, related to mental health counseling (Exh. 14F).

Upon review of the record, the Court is persuaded that the sleep study finding of "very severe obstructive sleep apnea with severe sleep fragmentation" confirms a severe impairment despite Plaintiff's prior history of surgery to treat the condition. Plaintiff, however, has not established that the condition would be severe if he treated the condition with a CPAP machine as recommended. Although Plaintiff has expressed difficulty adjusting to the CPAP machine, the ALJ's determination that Plaintiff could make the adjustment (R. 24) was a permissible inference on the record before the ALJ. Additionally, the ALJ's assessment that Plaintiff's COPD, influenced by obesity, was non-severe is supported by substantial evidence on the record. (R. 23.)

*2. Mental impairment*

Plaintiff contends that the ALJ erred when he found that Plaintiff's mental health was not severely impaired. In support of this argument, Plaintiff relies on Dr. Sharkey's treating source statement and NP Urbach's progress notes, including a diagnosis of Depressive Disorder NOS.

Depressive Disorder NOS is not a new diagnosis for Plaintiff, and was the primary psychological impairment evaluated by consultative examiner Richard Parker, Ph.D., in April 2012 (Exh. 5F), and was subsequently assessed as non-severe by Brian Stahl, Ph.D. (Initial

Determination, Exh. 1A). Given the September 2012 reconsideration assessment of David Houston, Ph.D. (Exh. 3A), care provider records, and the treating source statement of Dr. Sharkey (Exh. 13F), one could conceivably conclude that Plaintiff suffers from a severe depressive disorder. The standard, however, is not whether a finding is conceivable. Instead, the Court must assess whether substantial evidence on the record supports the ALJ's finding. Here, the ALJ's assessment, including his rejection of Dr. Sharkey's assessment of disabling mental health symptoms, is supported by the record.

Moreover, and importantly, the ALJ's assessment that Plaintiff has a residual functional capacity for only simple work accounts for the limitations that Plaintiff's depression would reasonably impose on his mental work activity. Indeed, the ALJ assessed a greater mental work limitation than Drs. Parker, Stahl and Houston did. Particularly given the lack of "significant signs of impairment" in the most recent progress notes, as mentioned by the ALJ, the ALJ's RFC finding sufficiently accounts for any limitation that would be imposed if Plaintiff's depressive disorder were deemed to be severe. In other words, even if the ALJ committed error at step 2 when he concluded that Plaintiff's depressive disorder was not severe, any such error would be harmless.

   3. *Progression of cervical degenerative disk disease*

Plaintiff argues that the ALJ exceeded his authority when, after he independently evaluated medical findings and impressions related to the progression of Plaintiff's cervical disk disease,[3] he concluded that the record did not support a finding of the existence of a related, severe impairment of the right upper extremity. (Statement of Errors at 9.) In particular, Plaintiff notes findings of nerve root irritation at the C6 – C7 level and radicular symptoms consistent with that finding (Exh.

---

[3] Plaintiff was treated with a spinal fusion at the C5 – C6 level in 2009. Chronic neck pain and decreased range of motion in the neck are the primary symptoms associated with the step 2 finding of "degenerative disk disease," as found by the ALJ. The ALJ also acknowledged the presence of tingling and pain in the right upper extremity.

6F), as diagnosed by Nancy Ball based on EMG and nerve conduction studies in March 2012. (*Id.*)

The ALJ concluded that the record did not reflect the presence of an upper extremity severe impairment, noting Dr. Ball's assessment of only "very mild" carpal tunnel syndrome on the right. (R. 22 – 23.) The ALJ also concluded that Plaintiff's allegations were only partially credible given the strenuous activity in which Plaintiff engaged after the onset date, which activity included shoveling and raking, splitting wood, and working on his truck. (R. 30 – 31.)

Although the ALJ found no severe right upper extremity impairment, when assessing Plaintiff's RFC, the ALJ determined that Plaintiff could not engage in work activity that would require him to climb ladders or scaffold and reach overhead. (R. 29.) Significantly, even though the ALJ determined that Plaintiff had a capacity for medium exertion, in the context of establishing Plaintiff's RFC, the ALJ adopted the consulting physicians' assessment of a light-work capacity (R. 33), and at step 5, the ALJ obtained exemplar jobs from the vocational expert that were light and sedentary (R. 35).[4]

Based on a review of the record, the Court concludes that the ALJ's findings are supported by substantial evidence on the record and did not involve the ALJ's assessment of evidence that is properly entrusted to experts. The supporting evidence includes Dr. Chamberlin's September 2012 reconsideration assessment (Exh. 3A), the ALJ's independent review of the medical findings and credibility assessments, Dr. Ball's description of and qualification of the carpal tunnel studies

---

[4] The record suggests that the evidence considered by consulting physician Richard Chamberlin at the reconsideration level included evidence from "Maine Med Partners Neurolog" through August 6, 2012, which would be the point in the administrative process at which the record gathered the EMG and nerve conduction studies. (Exh. 3A, R. 112.) However, in terms of identifying specific new reports, Dr. Chamberlin only referenced the review of a March 16, 2012, MRI at Mid Coast Hospital, noting "contact and impingement on exiting nerve root is possible," but "no major interval change." (R. 114.) Dr. Ball's studies were conducted on March 26, 2012, and were not mentioned by Dr. Chamberlin.

("very mild CTS" and "somewhat equivocal" findings) (R. 297), and Dr. William D'Angelo MD's subsequent assessment of "just a hint of irritation within his C7 innervated muscles in the right upper extremity" (R. 284).[5]

### C.    Weighing Expert Opinion "Function-By-Function"

Plaintiff argues that Dr. Sharkey's treating source statement (Exh. 13F) deserved controlling weight in this case. In her treating source statement, Dr. Sharkey addressed Plaintiff's physical and mental impairments. To the extent that the source statement was inconsistent with the ALJ's findings, the ALJ gave the statement no weight. Because Dr. Sharkey is a treating source, the ALJ was required to give "good reasons" for the weight assigned to her opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

While the ALJ did not specifically discuss Dr. Sharkey's opinion as to every work-related function, mental and physical, insofar as the ALJ's rejection of Dr. Sharkey's opinion was based in large part on the ALJ's assessment of the reliability of Dr. Sharkey's opinion, the ALJ's reasoning, if sufficient to constitute "good reasons," would support the ALJ's rejection of Dr. Sharkey's opinion in its entirety.

Social Security Ruling 96-8p (S.S.A. July 2, 1996) states that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," and that "it is necessary to assess the individual's capacity to perform each of these functions." However, neither the First Circuit not this Court has interpreted the ruling to require an ALJ to discuss a treating source's opinion with respect to each and every function that the treating source assessed. Rather, this Court has determined that the

---

[5] In relation to upper extremity limitation, Dr. Sharkey noted that Plaintiff must avoid vibrating machinery, working with his arms at or above the shoulder level, and pushing or pulling with the arms. (Exh. 13F, R. 418.) Plaintiff has not suggested that these RFC assessments are incompatible with the ALJ's finding that Plaintiff can adapt to work in occupations such as retail marker, addressor, and surveillance system monitor.

ALJ's assessment of a claimant's RFC is adequate if it is supported by substantial evidence, which may include a function-by-function assessment by a non-treating expert. *See*, *e.g.*, *Fernald v. Soc. Sec. Admin. Comm'r*, No. 1:11-CV-00248-NT, 2012 WL 1462036, at *4 (D. Me. Apr. 19, 2012) (Mag. J. Recommended Decision, adopted May 14, 2012); *West v. Soc. Sec. Admin. Comm'r*, No. 1:11-CV-00238-JAW, 2012 WL 892921, at *2 (D. Me. Mar. 13, 2012) (Mag. J. Recommended Decision, adopted Apr. 2, 2012). As SSR 96-8p establishes, treating source statements are but one item in a long list of relevant evidence in a case record.[6]

A review of the ALJ's decision reflects that the ALJ articulated good reasons in support of his rejection of Dr. Sharkey's treating source statement. Among other evidence cited in support of the ALJ's decision were work activity Plaintiff engaged in after his onset date and activities of daily living such as woodworking, wood splitting, and automotive work. Additionally, the ALJ explained that he found Dr. Sharkey's opinion unreliable because Dr. Sharkey opined that Plaintiff could not perform even sedentary work and because Dr. Sharkey assessed Plaintiff's mental health impairment as marked in the categories of social functioning and concentration, persistence, and pace, which assessments were inconsistent with Plaintiff's daily activities and the medical findings

---

[6] Social Security Ruling 96-8p includes the following language:

> The RFC assessment must be based on *all* of the relevant evidence in the case record, such as:
> * Medical history,
> * Medical signs and laboratory findings,
> * The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication),
> * Reports of daily activities,
> * Lay evidence,
> * Recorded observations,
> * Medical source statements,
> * Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,
> * Evidence from attempts to work,
> * Need for a structured living environment, and
> * Work evaluations, if available.

of record, including Dr. Sharkey's own findings. (R. 25, 31.) The asserted reasons constitute "good reasons" for rejecting a treating source opinion and, together with other evidence of record, represent substantial evidence in support of the ALJ's RFC determination.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Date this 9th day of July, 2015.